Roberta EVANS, Appellant,

v.

LINCOLN INCOME LIFE INSURANCE COMPANY, a corporation, Appellee.

No. 51132.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 19, 1978.

Released for Publication by Order of Court of Appeals Oct. 13, 1978.

James W. Bolt, Madill, for appellant.

Fischl, Culp, McMillin & Kern by Terry C. Kern, Ardmore, for appellee.

ROMANG, Judge:

This action was brought to recover accidental death benefits under a group insurance policy covering employees of the State of Oklahoma. The trial court granted summary judgment to the defendant insurer, Lincoln Income Life Insurance Company. Plaintiff, Roberta Evans, has appealed from an Order overruling her Motion for New Trial.

In arguing the Motion for Summary Judgment before the trial court, the insurer's counsel stated in part:

. . . Your Honor, the basic question it looks like that we're arguing is whether this is an accidental death or not. That's not the real question that it should be stated. . . . It's not whether this death was accidental, it's whether it is one as covered under the accidental death provision of this policy; whether it resulted as a direct result of accidental bodily injury and independently of all other causes, as evidenced by a visible contusion or wound on the exterior of the body.

In sustaining the Motion for Summary Judgment, the trial court stated:

. . . I want to make it very clear that I am not ruling, or not finding if this death was accidental or not. I'm simply saying that the coverage in the policy says if it was evidenced by visable contusion or wound of the exterior of the body. And on that basis I'm ruling that the Motion for Summary Judgment should be sustained.

In overruling plaintiff's Motion for New Trial, the trial court further stated:

. . . [T]hat page 12 of the policy is controlling; that from the pleadings and other instruments submitted in the file there is no evidence of a visible contusion or wound on the exterior of the body, so as to allow the plaintiff to recover for accidental death. For that reason the Motion for New Trial will be overruled.

Thus, the basic issue for the purpose of this appeal, is not whether the insured decedent died from accidental death, but whether he was not covered because he had no evidence of a visible contusion or wound on the exterior of his body.

The insured decedent paid his part of the monthly insurance premium by means of payroll deduction.

Plaintiff is the surviving widow of the insured decedent, and she is the named beneficiary in the policy. She filed the necessary claim, and it was denied before this suit was filed. Plaintiff alleged in her petition as follows:

The insured, Otis Olen Evans, expired from an accidental death of coronary oc-

clusion, caused by over-exertion while working for the State of Oklahoma Department of Highways.

■ The master insurance policy issued to the State of Oklahoma, on page 12 thereof, reads as follows:

Upon receipt of notice and due proof, as required herein, that any Employee, while insured for Accidental Death, Dismemberment and Loss of Sight Benefits under the policy, shall have sustained any of the losses listed in the following Table of Losses as the direct result of accidental bodily injury and independently of all other causes, as evidenced by a visible contusion or wound on the exterior of the body . . . . .

The insured employees were not given a copy of the master policy, but they were furnished only a booklet which, under the heading "Accidental Death," reads in pertinent part, on page 12 thereof, as follows:

The Full Amount will be paid for the following losses:

life

No payment will be made for losses occurring as a result of any of the following:

disease of the body

It is undisputed that the booklet entitled "Group Insurance Program" makes no mention under the heading of "Accidental Death" of "visible contusion or wound on the exterior of the body." Thus, there is a significant variance between the terms of the master policy furnished the State and the booklet, explaining the benefits, which was furnished each insured employee pursuant to 36 O.S.1971, § 4502, which provides:

Each group accident and health policy shall contain in substance the following provisions:

1. . . .

2. A provision that the insurer will furnish to the policyholder, for delivery to each employee or member of the insured group, an individual certificate setting forth in summary form a statement of the essential features of the insurance coverage of such employee or member and to whom benefits are payable.

A question similar to the one at hand arose in the case of *Lecker v. General American Life Insurance Co.*, 55 Haw. 624, 525 P.2d 1114 (1974). Therein, the Supreme Court of Hawaii said:

The single basic question presented for our consideration by this appeal relates to the legal effect of the provisions contained in the booklet-certificate which ostensibly granted to the beneficiary a greater insurance coverage with respect to accidental death benefits than under the printed policy of group insurance, which limited and excluded accidental death benefits when death results from accidental bodily injury arising from occupational hazards.

\* \* \* \* \* \*

The five limiting provisions in the booklet-certificate omitted, and did not include therein, the additional exclusionary condition set forth in the printed policy to-wit: "accidental bodily injury arising out of or in the course of any occupation or employment for compensation, profit or gain."

\* \* \* \* \* \*

It seems to us to be the better view, and which we adopt, that a significant policy exclusion which is not specified in the individual certificate should not be enforced.

The syllabus by the court in *Lecker*, supra, reads in part:

3. Where an insured group member under a group insurance does not receive from the insurer the policy of insurance, but only a booklet-certificate containing, among other things, a summary of the insurance coverage, pursuant to the terms of the policy and also in compliance with the requirements of HRS § 431–518, and there is no explicit direction in the booklet-certificate that the insured should obtain a copy of the policy and to read the same, the insured is entitled to rely upon the booklet-certificate, and where the insurance coverage is further limited by the policy, the insurer is estopped to show the policy exclusion not contained in the booklet-certificate.

In *Morris v. Travelers Ins. Co.*, 546 S.W.2d 477 (Mo.App.1976), the opinion quotes from *Equitable Life Assur. Soc. of United States v. Wagoner*, 269 So.2d 747 (Fla.App.1972), as follows:

"While the authorities are divided on the question, we believe the better view to be the one which holds that under group life insurance policies there is a contract between the insurer and the individual insured, that the contract consists of both the master policy and the certificate of insurance construed together, and that the ambiguities or conflicts between the two must be resolved so as to provide the broadest coverage."

The opinion in *Morris*, supra, further reads:

[T]he holdings of the Missouri cases are in accord with the notion of a direct contractual relation between the insured and the insurer.

\* \* \* \* \* \*

. . . Illinois clearly adopts the position that under contributory group policies, there is a contractual relationship between the employee and the group insurer. It follows from this then that the certificates issued to the individual employees constitute part of the contract. Thus, where there is an ambiguity or conflict between the terms of the master policy and the certificate, general rules of construction which require that ambiguities or conflicts must be resolved in favor of the insured are applied.

\* \* \* \* \* \*

Upon the basis of the foregoing, this case cannot be decided as defendant would insist on the basis of the general rule as to creation of coverage by estoppel. Nor can it turn on the oversimplification urged by the plaintiff that the certificate *is* the policy. Rather, this case as in all the cases reaching the issue of a claim of conflict between the certificate and the policy must be decided under the ordinary principles of contract construction.

■ The contract here to be construed is the master policy furnished the State, and the booklet furnished each insured employee. Therefore, the general rule that ambiguities or conflicts must be resolved in favor of the insured is applicable. Since the booklet makes no mention of "visible contusion or wound on the exterior of the body," we hold that the booklet is controlling, and that no visible contusion or wound on the body is necessary to recover for accidental death. Whether the decedent's death was accidental is a disputed fact question to be determined at trial.

In *Weaver v. Pryor Jeffersonian*, Okl., 569 P.2d 967 (1977), our Supreme Court held:

[O]n motion for summary judgment all inferences and conclusions to be drawn from underlying facts contained in such materials as affidavits, admissions, depositions, pleadings, exhibits and the like, must be viewed in a light most favorable to party opposing the motion. *Northrip v. Montgomery Ward & Co.*, Okl., 529 P.2d 489 (1974).

\* \* \* \* \* \*

Motion for summary judgment should be denied if the facts concerning any issue raised by the pleadings and affidavits thereinafter filed in the case are conflicting, or if reasonable men, in exercise of fair and impartial judgment, might reach different conclusions from undisputed facts concerning any issue as set forth in such instruments.

\* \* \* \* \* \*

We observe that summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use.

In view of the foregoing, the Order overruling plaintiff's Motion for New Trial is reversed, the Summary Judgment is also reversed, and this case is remanded for trial on its merits.

REVERSED AND REMANDED.

BOX, P. J., and REYNOLDS, J., concur.